UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**RUTH TRAVER,**

    Plaintiff,

v.

**PFIZER, INC.,**

    Defendant.

Case No. _D 7CV 1865_

_DSD/SRN_

**COMPLAINT**

Jury Trial Demanded

---

Plaintiff Ruth Traver, by and through her undersigned counsel, alleges as her Complaint against Defendant as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the amount in controversy exceeds $75,000, and Plaintiff is a citizen of a State which is different from the State where Defendant is incorporated and has its principal place of business.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and Defendant has at all relevant times been doing business in this district and throughout Minnesota, Ohio, and the United States.

## THE PARTIES

3.    Plaintiff Ruth Traver is a citizen of Pemberville, Ohio. In April 2003, Plaintiff suffered injury as a result of ingesting Defendant's defective product, the pharmaceutical drug Bextra.

**SCANNED**

APR 1 1 2007

U.S. DISTRICT COURT MPLS

4.    At all times herein mentioned, Defendant Pfizer, Inc. (hereinafter "Defendant") was and is a corporation existing under the laws of incorporation of the State of Delaware, with its principal place of business in New York, also doing business in the State of Minnesota. At all times herein mentioned, Defendant designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold a certain pharmaceutical drug herein referred to as Bextra.

## FACTUAL ALLEGATIONS

5.    Bextra is the brand name of valdecoxib, a COX-2 inhibitor, which purportedly reduces inflammation and pain associated with osteoarthritis, rheumatoid arthritis and primary dysmenorrhea.

6.    Bextra was approved by the Food and Drug Administration (hereinafter referred to as "the FDA") in November 2001 for treatment of osteoarthritis, rheumatoid arthritis and primary dysmenorrhea.

7.    The cardiac problems associated with COX-2 inhibitors, such as Bextra, have been documented since at least 2000. For example, a study published in the August 29, 2000 edition of Proceedings of the National Academy of Science entitled Cyclooxyganase-2 Mediates the Cardioprotective Effects of the Late Phase of Ischmeic Preconditioning in Conscious Rabbits, by Dr. Ken Shinmura et al., determined that COX-2 inhibitors blocked cardioprotective enzymes and thus increased the risk of heart attacks and strokes. These findings were further supported by an article that appeared in the August 14, 2001 issue of Circulation entitled Selective Cyclooxygenase-2 Inhibition on Vascular Response and Thrombosis in Canine Coronary Arteries, by Dr. James K. Hennan et al., concluding that there were significant "concerns regarding an increased risk of adverse vascular events in patients receiving COX-2

inhibitors." A third study, entitled Risk of Cardiovascular Events Associated with Selective COX-2 Inhibitors, by Dr. Debabrata Mukherjee et al., published in the August 22/29, 2001 edition of the Journal of the American Medical Association, also found that the "[c]urrent data would suggest that the use of selective COX-2 inhibitors might lead to increased cardiovascular events."

8.      Despite having clinical data in its possession, including but not limited to the studies identified above, indicating that the ingestion of Bextra represented an increases risk of cardiovascular injury, Defendant represented to consumers, their physicians, and Plaintiff that Bextra was safe and effective.

9.      Defendant sold Bextra by misleading users about the product and by failing to adequately warn the users of the potential serious dangers which Defendant knew or should have known might result from consuming its product. Defendant widely and successfully marketed Bextra throughout the United States by, among other things, conducting promotional campaigns which misrepresented the efficacy of Bextra in order to induce widespread use and consumption. Defendant made misrepresentations by means of media advertisements, and statements contained in the literature provided to Plaintiff's prescribing physician.

10.     On October 15, 2004, Defendant announced its own studies that demonstrated that the occurrence of strokes and heart attacks among Bextra users was more than double that of individuals given placebo.

11.     On April 7, 2005, the FDA ordered Defendant to recall Bextra due to the significant cardiovascular risks.

12.     As a result of ingesting the products manufactured, supplied, and/or sold by Defendant, in April 2003, Plaintiff suffered injury. As a result of the dangerously defective

nature of Defendant's product Bextra at the time of manufacture and distribution, Plaintiff, by using Bextra, sustained the injuries and damages as herein alleged.

13.     As a direct and proximate result of Defendant's negligence as further described herein, Plaintiff sustained a myocardial infarction and, as a result, sustained profound physical injury and economic loss.

14.     Had plaintiff known the risks and dangers associated with Defendant's product Bextra, or had Defendant disclosed such information to Plaintiff and her physicians, Plaintiff would not have taken Defendant's product Bextra and would not have suffered her Bextra-related injuries.

### FIRST CAUSE OF ACTION
### Strict Product Liability/
### (Failure to Warn)

15.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

16.     Defendant is a manufacturer and/or supplier of the pharmaceutical drug Bextra.

17.     The pharmaceutical drug Bextra manufactured and/or supplied by Defendant was unaccompanied by proper warnings regarding all possible adverse side effects and/or the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope of severity of the side effects.

18.     Defendant failed to perform adequate testing in that adequate testing would have shown that the pharmaceutical drug Bextra possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

19.     The pharmaceutical drug Bextra manufactured and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after the manufacturer knew or should have known of the risk of injury from Bextra, it failed to provide adequate warnings to users or consumers of the product and continued to aggressively promote the product.

20.     As the proximate cause and legal result of the inadequate warning and defective condition of Bextra as manufactured and/or supplied by Defendant, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of Defendant described herein:

      a.     Plaintiff suffered personal injury;

      b.     Plaintiff suffered economic loss; and

      c.     Plaintiff expended fair and reasonable expense for necessary health care, attention and services, and incurred incidental and related expenses.

### SECOND CAUSE OF ACTION
**Strict Product Liability**
**(Design Defect)**

21.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

22.     Defendant is a manufacturer and/or supplier of the pharmaceutical drug Bextra.

23.     The pharmaceutical drug Bextra manufactured and/or supplied by Defendant was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation.

24.     Alternatively, the pharmaceutical drug Bextra manufactured and/or supplied by Defendant was defective in design or formulation, in that, when it left the hands of the

manufacturer and/or suppliers, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of pain relief treatment.

25.     The pharmaceutical drug Bextra manufactured and/or supplied by Defendant was defective due to inadequate warning or instruction because the manufacturer knew or should have known that the product created a risk of harm to consumers and the Defendant failed to adequately warn of said risks.

26.     The pharmaceutical drug Bextra manufactured and/or supplied by Defendant was defective due to inadequate warning and/or inadequate testing.

27.     The pharmaceutical drug Bextra manufactured and/or supplied by Defendant was defective due to post-marketing warning or instruction because, after the manufacturer knew or should have known of the risk of injury from Bextra, it failed to provide adequate warning to users or consumers of the product and continued to promote the product.

28.     As the proximate cause and legal result of the defective condition of the pharmaceutical  drug Bextra as manufactured and/or supplied by Defendant, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of Defendant described herein:

    a.      Plaintiff suffered personal injury;

    b.      Plaintiff suffered economic loss; and

    c.      Plaintiff expended fair and reasonable expense for necessary health care, attention and services, and incurred incidental and related expenses.

## THIRD CAUSE OF ACTION
### Negligence

29. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

30. Defendant had a duty to exercise reasonable care in the manufacture, sale and/or distribution of the pharmaceutical drug Bextra into the stream of commerce, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects. Defendant failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, and/or distribution of the pharmaceutical drug Bextra into interstate commerce in that Defendant knew or should have known that the product Bextra created a high risk of unreasonable, dangerous side effects.

31. Defendant was negligent in the design, manufacture, testing, advertising, warning, marketing and sale of the pharmaceutical drug Bextra.

32. Despite the fact that Defendant knew or should have known that the pharmaceutical drug Bextra caused unreasonable, dangerous side effects, Defendant continued to market Bextra to consumers including Plaintiff.

33. Defendant knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

34. Defendant's negligence was a proximate cause of Plaintiff's injuries, harm and economic loss which she suffered and will continue to suffer as previously described.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty

35.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

36.     Defendant expressly warranted that the pharmaceutical drug Bextra was safe and effective for its intended use and well tolerated by patients studied.

37.     Plaintiff relied upon the skill, judgment and express warranties of Defendant.

38.     The pharmaceutical drug Bextra did not conform to these express representations because Bextra is not safe and causes serious side effects, including life threatening side effects.

39.     As a direct and proximate result of the breach of said warranties, Plaintiff suffered and will continue to suffer injury, harm and economic loss as alleged herein.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty

40.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

41.     At all times mentioned herein, Defendant manufactured and/or supplied the pharmaceutical drug Bextra, and prior to the time it was ingested by Plaintiff, Defendant impliedly warranted to Plaintiff, and to her agents, that the product was of merchantable quality and safe for the use for which it was intended.

42.     Plaintiff and her agents relied on the skills and judgment of Defendant in using the aforesaid product.

43.     The product was unsafe for its intended use, and it was not of merchantable quality, as warranted by Defendant in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was not

accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause Plaintiff to sustain damages and injuries as herein alleged.

44. As a direct and proximate result of the breach of said warranties, Plaintiff suffered and will continue to suffer injury, harm and economic loss as alleged herein.

### SIXTH CAUSE OF ACTION
**Fraudulent Concealment**

45. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

46. At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiff and her physicians the true facts concerning Bextra; that is, that said product was dangerous, defective, and likely to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendant made the affirmative representations as set forth above to Plaintiff and her physicians and the general public prior to the dates Plaintiff ingested Bextra, while concealing material facts, with the intent that the Plaintiff and her physicians rely upon such representations.

47. At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiff and her physicians the true facts concerning Bextra; that is, that said product could cause injuries including but not limited to heart attacks, strokes, and death.

48. At all times herein mentioned, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff and her physicians with the intent to defraud as herein alleged.

49.     At all times herein mentioned, neither Plaintiff nor her physicians were aware of the facts set forth above, and, had she been aware of said facts, she would not have acted as she did, that is, would not have utilized the product.

50.     As a result of the concealment or suppression of the facts set forth above, Plaintiff sustained injuries and damages as set forth herein.

### SEVENTH CAUSE OF ACTION
### Violation Of The Uniform Deceptive Trade Practices Act

51.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

52.     The Uniform Deceptive Trade Practices Act prohibits falsely advertising or representing the quality and/or ingredients of goods or merchandise sold in the United States.

53.     Defendant engaged in acts and practices, as described in this Complaint, which mislead the general public in violation of these consumer protection statutes.  Defendant has advertised, marketed and sold this drug through the use of misleading, incomplete and deceptive advertising, promotion and product identification, in violation of the consumer protection statutes of this State.

54.     At all times herein mentioned Defendant violated the Uniform Deceptive Trade Practices Act by disseminating untrue and misleading statements and engaging in conduct likely to deceive consumers, by engaging in acts and practices with intent to induce Plaintiff to use Bextra.

55.     This conduct includes, but is not limited to, representing to Plaintiff that Bextra, and all its ingredients, were safe, fit and effective for human consumption, knowing that said representations were false, and concealing from Plaintiff that said product had a serious

propensity to cause injuries to users, and purposely downplaying and understating the health hazards and risks associated with this drug.

56.     The foregoing practices constitute false and misleading advertising, unlawful trade practices, and deceptive trade practices within the meaning of the Uniform Deceptive Trade Practices Act.

57.     As a result of its conduct described above Defendant has been, and will be, unjustly enriched.  Specifically, Defendant has been unjustly enriched by receipt of millions of dollars from the sale of said drug, sold in large part as a result of the acts and omissions described herein.

58.     Because of the fraudulent misrepresentations made by Defendant as detailed above, and the inherently unfair practice of committing a fraud against the public by misrepresenting and concealing material information, the acts of Defendant described herein constitute a deceptive trade practice.

59.     As a direct and proximate result of Defendant's violation of the Uniform Deceptive Trade Practices Act, Plaintiff suffered injuries and damages as alleged herein.

**EIGHTH CAUSE OF ACTION**
**Unjust Enrichment**

60.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

61.     Defendant accepted payment from Plaintiff for the purchase of Bextra.

62.     Plaintiff did not receive a safe and effective drug for which she paid.

63.     It would be inequitable for Defendant to retain this money because Plaintiff did not, in fact, receive a safe and efficacious drug.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.      Compensatory damages awarded against Defendant in an amount deemed appropriate by their trier of fact to compensate Plaintiff for her pain and suffering as well as for her actual damages, including but not limited to, medical, incidental, hospital, and service expenses, loss of earnings and earning capacity;

2.      Damages as allowed by law;

3.      Prejudgment and post judgment interest on all damages as is allowed by the law;

4.      Mental and emotional distress damages;

5.      Restitution of all purchase costs that Plaintiff paid for Bextra, disgorgement of Defendant's profits, and such other relief as provided by law;

6.      Costs, including expert fees and attorneys' fees and expenses, and costs incurred in the prosecution of this action; and,

7.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands that all issues of fact in this case be tried to a properly impaneled jury.

Date: April 11, 2007                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By: _____
    Robert K. Shelquist, #21310X
    Yvonne M. Flaherty, #267600
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone:     612-339-6900
Facsimile:     612-339-0981

Arthur Sherman, Esq. (Cal. Bar No. 24403)
Richard Salkow, Esq. (Cal. Bar No. 204572)
Sherman & Salkow
A Professional Corporation
11601 Wilshire Boulevard, Suite 675
Los Angeles, CA 90025
Telephone:     310-914-8484
Facsimile:     310-914-0079

*Attorneys for Plaintiff*

**LOCKRIDGE GRINDAL NAUEN**
P.L.L.P.
ATTORNEYS AT LAW

SUITE 2200
100 WASHINGTON AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55401-2179

TELEPHONE (612) 339-6900
FACSIMILE (612) 339-0981

SUITE 210
415 SECOND STREET, N.E.
WASHINGTON, D.C. 20002-4900

TELEPHONE (202) 544-9840
FACSIMILE (202) 544-9850

WWW.LOCKLAW.COM

ROBERT J. SCHMIT
RICHARD A. LOCKRIDGE
CHARLES N. NAUEN*
H. THEODORE GRINDAL
W. JOSEPH BRUCKNER
CHRISTOPHER K. SANDBERG
J. MICHAEL SCHWARTZ
BERT BLACK**
HARRY E. GALLAHER
WILLIAM A. GENGLER
ERIC C. TOSTRUD
ROBERT K. SHELQUIST
HENRI G. MINETTE
GREGG M. FISHBEIN
SUSAN E. ELLINGSTAD
KAREN HANSON RIEBEL
HEIDI M. SILTON

OF COUNSEL
DANIEL A. FARBER***
ELIZABETH A. SNELSON
BRADLEY W. ANDERSON
PATRICIA A. BLOODGOOD*

*ALSO ADMITTED IN WISCONSIN
**ALSO ADMITTED IN TEXAS
***ADMITTED IN WASHINGTON, D.C. ONLY

SARA L. MADSEN
GREGORY J. MYERS
YVONNE M. FLAHERTY
DARLA JO BOGGS
LISA M. POLLARD****
DAVID J. ZOLL
NATHAN D. PROSSER
ELIZABETH R. ODETTE
DAVID W. ASP
R. REID LEBEAU II
CARMEN B. COPHER
SARAH M. RUSSELL

****ADMITTED IN NEW YORK ONLY

GOVERNMENT RELATIONS†
DENNIS M. MCGRANN
KATHLEEN K. MICHELETTI
DOUG D. STANG
ALLYSON J. HARTLE
REBECCA K. KLETT
MARA B. HUMPHREY
MATTHEW S. SCHAFER
BRIAN M. WILLIAMS
MEGAN G. HELGE

† NON-ATTORNEY LOBBYISTS

April 11, 2007

**VIA MESSENGER**
Clerk of Court
U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

    Re:   *Ruth Traver v. Pfizer, Inc.*

Dear Clerk of Court:

    Enclosed for filing in the above-referenced matters is a Summons, Complaint, and Civil Cover Sheet. I have also enclosed a check in the amount of $350.00 in payment of the filing fee.

    Please sign the Summons, file-stamp the copy of the Complaint and return to the messenger for return to my office.

    If you have any questions, please feel free to contact me.

          Very truly yours,

          LOCKRIDGE GRINDAL NAUEN P.L.L.P.

          Yvonne M. Flaherty

YMF/brg
Enclosures

368402-1